# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

IN THE MATTER OF:                          CASE NO.: 23-20053-PDR
Luisa Fernanda Alonso                      CHAPTER 13

                          **Debtor**

---

## DEBTOR'S EXPEDITED MOTION TO SELL HOMESTEAD REAL <u>PROPERTY AND EMERGENCY HEARING REQUESTED</u>

**BASIS FOR THE EMERGENCY: A CLOSING DATE IS SCHEDULED FOR APRIL 18, 2024. AS A CONDITION OF CLEARING TITLE, TITLE UNDERWRITERS REQUIRE THAT THE SALE TAKE PLACE AT LEASET FOURTEEN DAYS AFTER THE ENTRY OF AN ORDER GRANTING THE SALE. COUNSEL REQUESTS THAT THIS MATTER BE SCHEDULED FOR A HEARING ON MARCH 28, 2024, AT 2:00 PM, AS COUNSEL HAS ANOTHER MATTER SET FOR THAT CALENDAR.**

      **COMES NOW**, the Debtor, Luisa Fernanda Alonso, by and though undersigned counsel and moves this Court for an Order Granting the Motion to Sell Homestead Real Property and in support would state as follows:

      1.      On December 5, 2023, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code.

      2.      On Bankruptcy Schedule A/B,[1] Debtor listed her ownership interest in real property located at 16720 SW 36 Street, Hollywood, FL 33027. An amended Schedule A/B[2] was filed, correcting the address to 16720 SW 36 Street, Miramar, FL 33027 (hereinafter "Property") and legally described as,

> *Lot 26, Block 12, NAUTICA, according to the map or plat thereof as recorded in Plat Book 164, Page 36, the Public Records of Broward County, Florida.*

      3.      The Debtor has claimed the homestead exemption on the subject property, and to date, no objections to the Debtor's claimed homestead exemption have been filed.

      4.      The debtor has executed a contract for the sale of the property. A true and correct copy of the contract and addendum is attached hereto as exhibit "A".

---

[1] ECF No. 23.
[2] ECF No. 52.

5.      The subject Property is encumbered by a mortgage, which U.S. Bank Trust National Association, as Trustee of Chalet Series III Trust, has obtained a final judgment of mortgage foreclosure and re-establishment of lost note.

6.      The Debtor requests that the Court authorize the closing agent to pay the mortgages, any valid encumbrances, attorney's fees and closing costs directly at closing. Debtor further requests that the closing agent be permitted to disburse the net sales proceeds to the Debtor directly.

7.      The undersigned counsel requests attorney's fees and costs in the amount of $800.00, for filing this Motion, which the Debtor agrees shall be paid through the plan.

8.      A proposed Order is attached hereto as "Exhibit B".

**WHEREFORE**, the Debtor, Luisa Fernanda Alonso, respectfully prays that this Honorable Court enter an order, in recordable form; a) authorizing debtor to sell the subject Property; b) directing any closing agent satisfy the mortgage, any valid encumbrances, attorney's fees and closing cost costs directly at closing; c) allow for the net sales proceeds to be paid to the Debtor directly, and d) approve the requested attorney's fees and cost.

### <u>CERTIFICATION OF LOCAL RULE 9075-I</u>

The closing date is scheduled for April 18, 2024. As a condition of clearing title, it is customary for title underwriters to require the closing to take place at least fourteen days from the entry of an order approving the sale.

Dated this 8th day of March 2024

Submitted by:
/s/ Rachamin Cohen
Rachamin "Rocky" Cohen, Esq.
Attorney for Debtor
Florida Bar No. 96305
Cohen Legal Services, PA
1801 NE 123sr Street, Suite 314
North Miami, FL 33181
Telephone: 305-570-2326
Email: rocky@lawcls.com

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been forwarded by CM/ECF to Robin Weiner, Trustee, and parties listed below. Additional service via US Mail on all additional parties on the attached list, this 8th day of March 2024.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

Submitted by:
/s/ Rachamin Cohen
Rachamin "Rocky" Cohen, Esq.
Attorney for Debtor
Florida Bar No. 96305
Cohen Legal Services, PA
1801 NE 123sr Street, Suite 314
North Miami, FL 33181
Telephone: 305-570-2326
Email: rocky@lawcls.com

```
Label Matrix for local noticing        Broward County                          Bank of America
113C-0                                 c/o Records, Taxes & Treasury           Attn: Bankruptcy
Case 23-20053-PDR                      Attn: Bankruptcy Section                 4909 Savarese Circle
Southern District of Florida           115 S. Andrews Ave. A-100               Tampa, FL 33634-2413
Fort Lauderdale                        Ft. Lauderdale, FL 33301-1888
Fri Mar  8 13:27:59 EST 2024

Capital One                            Citibank                                Citibank, N.A.
Attn: Bankruptcy                       Citicorp Cr Srvs/Cerntalized Bankruptcy 5800 S Corporate Pl
PO Box 30285                           PO Box 790040                           Sioux Falls, SD  57108-5027
Salt Lake City, UT 84130-0285         St Louis, MO 63179-0040


Costco Citi Card                       Discover Personal Loans                 Discover Personal Loans
Attn: Bankruptcy                       Attn: Bankruptcy                        PO Box 30954
PO Box 6500                            PO Box 30954                            Salt Lake City, UT 84130-0954
Sioux Falls, SD 57117-6500            Salt Lake City, UT 84130-0954


Office of the US Trustee               (p)SN SERVICING CORPORATION             (p)TROPICAL FINANCIAL CREDIT UNION
51 S.W. 1st Ave.                       323 FIFTH ST                            3050 CORPORATE WAY
Suite 1204                             EUREKA CA 95501-0305                    MIRAMAR FL 33025-6548
Miami, FL 33130-1614


U.S. Bank Trust National Association, as Tru   US Bank Trust National          Volkswagen Credit, Inc
c/o SN Servicing Corporation                   Association                     Attn: Bankruptcy
323 5th Street                                 800 Nicollet Mall               PO Box 3
Eureka, CA 95501-0305                          Minneapolis, MN 55402-7000      Hillsboro, OR 97123-0003


Luisa Fernanda Alonso                  Rachamin Cohen                          Robin R Weiner
16720 SW 36 St                         Rachamin Cohen                          Robin R. Weiner, Chapter 13 Trustee
Miramar, FL 33027-4503                 1801 NE 123rd Street                    Post Office Box 559007
                                       Ste 314                                 Fort Lauderdale, FL 33355-9007
                                       North Miami, FL 33181-2883


Stacy Bressler
Law Office Of Stacy Bressler
PO Box121506
Ft. Lauderdale, FL 33312-0026
```

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

```
SN Servicing Corporation               Tropical Financial Credit Union
323 5th Street                         Attn: Bankruptcy
Eureka, CA 95501                       PO Box 829517
                                       Pembroke Pines, FL 33082
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)U.S. Bank Trust National Association, as T

(d)Broward County
c/o Records, Taxes & Treasury
Attn:  Bankruptcy Section
115 S. Andrews Ave. A-100
Ft. Lauderdale, FL 33301-1888

End of Label Matrix
Mailable recipients    18
Bypassed recipients     2
Total                  20

Exhibit "A"



# "AS IS" Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

1* **PARTIES:** JAMES E CABRERA LUISA FERNANDA ALONSO ("Seller"),
2* and Michael Broady Maria Afrodi Broady ("Buyer"),
3 agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4 (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5 and any riders and addenda ("Contract"):
6 **1. PROPERTY DESCRIPTION:**
7* (a) Street address, city, zip: 16720 SW 36th St Miramar 33027
8* (b) Located in: Broward County County, Florida. Property Tax ID #: 514029043760
9* (c) Real Property: The legal description is:
10 NAUTICA PLAT 164-36 B LOT 26 BLK 12
11
12 together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13 attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14 by other terms of this Contract.
15 (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16 which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17 purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), light fixture(s), drapery rods
18 and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), thermostat(s), doorbell(s),
19 television wall mount(s) and television mounting hardware, security gate and other access devices, mailbox
20 keys, and storm shutters/storm protection items and hardware ("Personal Property").
21* Other Personal Property items included in this purchase are:
22
23 Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
24* (e) The following items are excluded from the purchase:
25

## PURCHASE PRICE AND CLOSING

27* **2. PURCHASE PRICE** (U.S. currency): .................................................................................. $ 666,500.00
28* (a) Initial deposit to be held in escrow in the amount of **(checks subject to Collection)** ........... $ 10,000.00
29 The initial deposit made payable and delivered to "Escrow Agent" named below
30* **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☒ is to be made within __3__ (if left blank,
31 then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN OPTION (ii)
32 SHALL BE DEEMED SELECTED.
33* Escrow Agent Name: Cohen Legal Services, P.A.
34* Address: 1801 NE 123rd Street, Ste 314 North Miami, FL 33181 Phone: (305) 570-2326
35* Email: Rocky@lawcls.com Fax: (305) 256-5958
36* (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
37* days after Effective Date .................................................................................................. $
38 (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
39* (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ........ 586,500
40* (d) Other: ...........................................................................................................................
41 (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
42* transfer or other Collected funds (See STANDARD S) ...................................................... $ 70,000.00
43 **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44 (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45* __3/5/2024__, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46 Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47 the counter-offer is delivered.
48 (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49 initialed and delivered this offer or final counter-offer ("Effective Date").
50 **4. CLOSING; CLOSING DATE:** The closing of this transaction shall occur when all funds required for closing are
51 received by Closing Agent and Collected pursuant to STANDARD S and all closing documents required to be
52 furnished by each party pursuant to this Contract are delivered ("Closing"). Unless modified by other provisions of

Buyer's Initials _mb_ _mab_ Page 1 of 13 Seller's Initials _JEC_ _LFA_
FloridaRealtors/FloridaBar-ASIS-6x Rev.7/23 © 2023 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Jose Luis Gener - United Realty Group Inc] www.transactiondesk.com. TRANSACTIONS

53 * this Contract, the Closing shall occur on _____**4/18/2024**_____ ("Closing Date"), at the time
54 established by the Closing Agent.

**5. EXTENSION OF CLOSING DATE:**

56 (a) In the event Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial
57 Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), if Paragraph 8(b) is
58 checked, Loan Approval has been obtained, and lender's underwriting is complete, then Closing Date shall be
59 extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 7
60 days.

61 (b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the
62 unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be
63 extended as provided in STANDARD G.

**6. OCCUPANCY AND POSSESSION:**

65 (a) Unless Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property
66 to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all
67 personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and
68 codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss
69 to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and
70 shall have accepted the Property in its existing condition as of time of taking occupancy, see Rider T PRE-
71 CLOSING OCCUPANCY BY BUYER.

72 (b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is
73 subject to a lease(s) or any occupancy agreements (including seasonal and short-term vacation rentals) after
74 Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof
75 shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all
76 within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of
77 occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such
78 election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the
79 Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s)
80 and Seller's affidavit shall be provided pursuant to STANDARD D, except that tenant Estoppel Letters shall not
81 be required on seasonal or short-term vacation rentals. If Property is intended to be occupied by Seller after
82 Closing, see Rider U POST-CLOSING OCCUPANCY BY SELLER.

83 * **7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under
84 * this Contract; ☐ may assign but not be released from liability under this Contract; or ☒ may not assign this Contract.
85 IF NO BOX IS CHECKED, THEN BUYER MAY NOT ASSIGN THIS CONTRACT.

86 **FINANCING**

**8. FINANCING:**

88 * ☐ (a) This is a cash transaction with no financing contingency.

89 * ☒ (b) This Contract is contingent upon, within ___**30**___ (if left blank, then 30) days after Effective Date ("Loan
90 * Approval Period"): (1) Buyer obtaining approval of a ☐ conventional ☐ FHA ☒ VA or ☐ other _____
91 * (describe) mortgage loan for purchase of the Property on a **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☒ fixed or
92 * adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left
93 * blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of ___**30**___(if left blank, then 30)
94 years ("Financing"); and (2) Buyer's mortgage broker or lender having received an appraisal or alternative valuation
95 of the Property satisfactory to lender, if either is required by lender, which is sufficient to meet the terms required
96 for lender to provide Financing for Buyer and proceed to Closing ("Appraisal").

97 * (i) Buyer shall make application for Financing within ___**5**___ (if left blank, then 5) days after Effective Date
98 and use good faith and diligent effort to obtain approval of a loan meeting the Financing and Appraisal terms of
99 Paragraph 8(b)(1) and (2), above, ("Loan Approval") within the Loan Approval Period and, thereafter, to close this
100 Contract. Loan Approval which requires Buyer to sell other real property shall not be considered Loan Approval
101 unless Rider V is attached.

102 Buyer's failure to use good faith and diligent effort to obtain Loan Approval during the Loan Approval Period shall
103 be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes,
104 but is not limited to, timely furnishing all documents and information required by Buyer's mortgage broker and lender
105 and paying for Appraisal and other fees and charges in connection with Buyer's application for Financing.

106 (ii) Buyer shall, upon written request, keep Seller and Broker fully informed about the status of Buyer's
107 mortgage loan application, loan processing, appraisal, and Loan Approval, including any Property related conditions
108 of Loan Approval. Buyer authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status

This software is licensed to [Jose Luis Gener - United Realty Group Inc] www.transactiondesk.com. TRANSACTIONS

Authentisign ID: 6AD15E77-4DDA-EE11-85F9-6045BDD68161

and progress and release preliminary and finally executed closing disclosures and settlement statements, as appropriate and allowed, to Seller and Broker.

(iii) If within the Loan Approval Period, Buyer obtains Loan Approval, Buyer shall notify Seller of same in writing prior to expiration of the Loan Approval Period; or, if Buyer is unable to obtain Loan Approval within Loan Approval Period but Buyer is satisfied with Buyer's ability to obtain Loan Approval and proceed to Closing, Buyer shall deliver written notice to Seller confirming same, prior to the expiration of the Loan Approval Period.

(iv) If Buyer is unable to obtain Loan Approval within the Loan Approval Period, or cannot timely meet the terms of Loan Approval, all after the exercise of good faith and diligent effort, Buyer may terminate this Contract by delivering written notice of termination to Seller prior to expiration of the Loan Approval Period; whereupon, provided Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract.

(v) If Buyer fails to timely deliver any written notice provided for in Paragraph 8(b)(iii) or (iv), above, to Seller prior to expiration of the Loan Approval Period, then Buyer shall proceed forward with this Contract as though Paragraph 8(a), above, had been checked as of the Effective Date; provided, however, Seller may elect to terminate this Contract by delivering written notice of termination to Buyer within 3 days after expiration of the Loan Approval Period and, provided Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract.

(vi) If Buyer has timely provided either written notice provided for in Paragraph 8b(iii), above, and Buyer thereafter fails to close this Contract, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default or inability to satisfy other contingencies of this Contract; or (2) Property related conditions of the Loan Approval (specifically excluding the Appraisal valuation) have not been met unless such conditions are waived by other provisions of this Contract; in which event(s) the Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

☐ (c) Assumption of existing mortgage (see Rider D for terms).
☐ (d) Purchase money note and mortgage to Seller (see Rider C for terms).

## CLOSING COSTS, FEES AND CHARGES

**9.  CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
  (a) **COSTS TO BE PAID BY SELLER:**
  • Documentary stamp taxes and surtax on deed, if any
  • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)
  • Title search charges (if Paragraph 9(c)(iii) is checked)
  • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)
  • Charges for FIRPTA withholding and reporting

  • HOA/Condominium Association estoppel fees
  • Recording and other fees needed to cure title
  • Seller's attorneys' fees
  • Other: _____

  If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11, a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.

  (b) **COSTS TO BE PAID BY BUYER:**
  • Taxes and recording fees on notes and mortgages
  • Recording fees for deed and financing statements
  • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)
  • Survey (and elevation certification, if required)
  • Lender's title policy and endorsements
  • HOA/Condominium Association application/transfer fees
  • Municipal lien search (if Paragraph 9(c)(ii) is checked)
  • Other: _____

  • Loan expenses
  • Appraisal fees
  • Buyer's Inspections
  • Buyer's attorneys' fees
  • All property related insurance
  • Owner's Policy Premium (if Paragraph 9(c)(iii) is checked)

  (c) **TITLE EVIDENCE AND INSURANCE:** At least ___15___ (if left blank, then 15, or if Paragraph 8(a) is checked, then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, Seller shall furnish a copy to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated and allocated in accordance with Florida law, but may be reported differently on certain federally mandated closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a

Buyer's Initials  [mb]  [mab]        Page 3 of 13        Seller's Initials  LFA    JEC
FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors® and The Florida Bar. All rights reserved.

165  search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
166  liens imposed pursuant to Chapters 153. 159 or 170, F.S., in favor of any governmental body, authority or agency.
167  **(CHECK ONE):**   See Additional Terms Item 3  *mb*  *mab*  JEC  *LFA*
168 ★  ☐ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
169 ★  premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
170  endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
171  provider(s) as Buyer may select; or
172★  ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
173  services related to Buyer's lender's policy, endorsements and loan closing; or
174 ★  ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Buyer shall designate Closing Agent. Seller shall
175 ★  furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a
176  continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for
177  reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing
178  continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not
179 ★  be obligated to pay more than $_____ (if left blank, then $200.00) for abstract continuation or title
180  search ordered or performed by Closing Agent.
181  (d) **SURVEY:** At least 5 days prior to Closing Date, Buyer may, at Buyer's expense, have the Real Property
182  surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
183  Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
184★  (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by
185 ★  _____ at a cost not to exceed $_____. A home
186  warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
187  appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
188  (f) **SPECIAL ASSESSMENTS**: At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
189  ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
190  ratified before Closing, and (ii) the amount of the public body's most recent estimate or assessment for an
191  improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
192  imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
193  be paid in installments **(CHECK ONE):**
194 ★  ☒ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
195  Installments prepaid or due for the year of Closing shall be prorated.
196 ★  ☐ (b) Seller shall pay, in full, prior to or at the time of Closing, any assessment(s) allowed by the public body
197  to be prepaid. For any assessment(s) which the public body does not allow prepayment, OPTION (a) shall be
198  deemed selected for such assessment(s).
199  IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
200  This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
201  (CDD) pursuant to Chapter 190, F.S., or special assessment(s) imposed by a special district pursuant to
202  Chapter 189, F.S., which lien(s) or assessment(s) shall be prorated pursuant to STANDARD K.

203  **DISCLOSURES**

204  **10. DISCLOSURES:**
205  (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
206  sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
207  exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
208  radon and radon testing may be obtained from your county health department.
209  (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
210  does not know of any improvements made to the Property which were made without required permits or made
211  pursuant to permits which have not been properly closed or otherwise disposed of pursuant to Section 553.79,
212  F.S. If Seller identifies permits which have not been closed or improvements which were not permitted, then
213  Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession,
214  knowledge, or control relating to improvements to the Property which are the subject of such open permits or
215  unpermitted improvements.
216  (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
217  desires additional information regarding mold, Buyer should contact an appropriate professional.
218  (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
219  zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
220  improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"

Buyer's Initials  *mb*   *mab*    Page 4 of 13    Seller's Initials  JEC    *LFA*
FloridaRealtors/FloridaBar-ASIS-6x    Rev.7/23 © 2023 Florida Realtors® and The Florida Bar. All rights reserved.

221  or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
222  Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
223  flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
224  through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
225★  may terminate this Contract by delivering written notice to Seller within __20__ (if left blank, then 20) days after
226  Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
227  obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
228  designation of Property.

229  (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
230  required by Section 553.996, F.S.

231  (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
232  mandatory.

233  (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
234  **CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS'**
235  **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

236  (h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
237  PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
238  PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
239  IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
240  PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE
241  COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

242  (i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if
243  Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer
244  and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller
245  is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status,
246  under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD
247  V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax
248  advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to
249  FIRPTA.

250  (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are
251  not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding
252  sentence, Seller extends and intends no warranty and makes no representation of any type, either express or
253  implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller
254  has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected
255  building, environmental or safety code violation.

256  **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

257  **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the
258  Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS
259  IS Maintenance Requirement"). See Paragraph 9(a) for escrow procedures, if applicable.

260  **12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

261★  (a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have __7__ (if left blank, then 15)*
262  *days after Effective Date ("Inspection Period") within which to have such inspections of the Property*
263  *performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole*
264  *discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering*
265  *written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely*
266  *terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall*
267  *be released of all further obligations under this Contract; however, Buyer shall be responsible for*
268  *prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting*
269  *from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the*
270  *preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to*
271  *terminate granted herein, Buyer accepts the physical condition of the Property and any violation of*
272  *governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to*
273  *Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all*
274  *repairs and improvements required by Buyer's lender.*

Buyer's Initials  mb  mab   Page 5 of 13   Seller's Initials  JEC  LFA
FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Jose Luis Gener - United Realty Group Inc] www.transactiondesk.com.

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

(d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

## ESCROW AGENT AND BROKER

**13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to Collection, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become Collected shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing and termination of this Contract.

**14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.

Buyer's Initials  mb  mab        Page 6 of 13        Seller's Initials  JEC    LFA

FloridaRealtors/FloridaBar-ASIS-6x    Rev.7/23 © 2023 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Jose Luis Gener - United Realty Group Inc] www.transactiondesk.com.    TRANSACTION

331 Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and
332 paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve
333 Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker
334 will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

335 **DEFAULT AND DISPUTE RESOLUTION**

336 **15. DEFAULT:**
337    (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
338      including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit
339      for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and
340      in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under
341      this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's
342      rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall
343      be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share
344      shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.
345    (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
346      reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
347      Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
348      from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
349      performance.
350    This Paragraph 15 shall survive Closing or termination of this Contract.
351 **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
352 Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled
353 as follows:
354    (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
355      resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
356      16(b).
357    (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
358      Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
359      The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
360      sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
361      may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph
362      16 shall survive Closing or termination of this Contract.
363 **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
364 by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
365 conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover
366 from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the
367 litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

368 **STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**

369 **18. STANDARDS:**
370    **A. TITLE:**
371    (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
372    Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
373    be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at
374    or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance
375    in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
376    subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
377    prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the
378    Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of
379    entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than
380    10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and
381    subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach
382    addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES**. If there exists at Closing
383    any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall
384    be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance
385    with law.

This software is licensed to [Jose Luis Gener - United Realty Group Inc] www.transactiondesk.com.

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

(ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the extent the affirmations therein are true and correct.

**C. INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

**D. LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s) the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations thereunder.

**E. LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.

**F. TIME: Time is of the essence in this Contract.** Calendar days, based on where the Property is located, shall be used in computing time periods. Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur on a Saturday, Sunday, national legal public holiday (as defined in 5 U.S.C. Sec. 6103(a)), or a day on which a national legal public holiday is observed because it fell on a Saturday or Sunday, shall extend to the next calendar day which is not a Saturday, Sunday, national legal public holiday, or a day on which a national legal public holiday is observed.

**G. FORCE MAJEURE:** Buyer or Seller shall not be required to exercise or perform any right or obligation under this Contract or be liable to each other for damages so long as performance or non-performance of the right or obligation, or the availability of services, insurance, or required approvals essential to Closing, is disrupted, delayed,

Buyer's Initials ___mb___ ___mab___   Page 8 of 13   Seller's Initials ___JEC___ ___LFA___
FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Jose Luis Gener  -  United Realty Group Inc] www.transactiondesk.com.

caused or prevented by a Force Majeure event. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fires, or other acts of God, unusual transportation delays, wars, insurrections, civil unrest, or acts of terrorism, governmental actions and mandates, government shut downs, epidemics, or pandemics, which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome. The Force Majeure event will be deemed to have begun on the first day the effect of the Force Majeure prevents performance, non-performance, or the availability of services, insurance or required approvals essential to Closing. All time periods affected by the Force Majeure event, including Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure event no longer prevents performance under this Contract; provided, however, if such Force Majeure event continues to prevent performance under this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

**H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's, personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract.

**I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**

(i) **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title insurance and will take place in the county where the Real Property is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic means.

(ii) **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s), owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable, the survey, flood elevation certification, and documents required by Buyer's lender.

(iii) **FinCEN GTO REPORTING OBLIGATION.** If Closing Agent is required to comply with a U.S. Treasury Department's Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Order ("GTO"), then Buyer shall provide Closing Agent with essential information and documentation related to Buyer and its Beneficial Owners, including photo identification, and related to the transaction contemplated by this Contract which are required to complete mandatory reporting, including the Currency Transaction Report; and Buyer consents to Closing Agent's collection and report of said information to IRS.

(iv) **PROCEDURE:** The deed shall be recorded upon Collection of all closing funds. If the Title Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to Collection of all closing funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

**J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

**K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes (including special benefit tax assessments imposed by a CDD pursuant to Chapter 190, F.S., and assessments imposed by special district(s) pursuant to Chapter 189, F.S.), interest, bonds, association fees, insurance, rents and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment

Buyer's Initials ___mb___ ___mab___          Page 9 of 13          Seller's Initials _JEC_ _LFA_
FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Jose Luis Gener - United Realty Group Inc] www.transactiondesk.com.   TRANSACTIONS

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the maximum allowable discounts and applicable homestead and other exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K shall survive Closing.

**L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections, including a walk-through (or follow-up walk-through if necessary) prior to Closing.

**M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5% or receive a refund of the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

**N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

**O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public or official records. This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may only be made by mail, facsimile transmission, personal delivery or email. A facsimile or electronic copy of this Contract and any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

**P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

**Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

**R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

**S. COLLECTION or COLLECTED:** "Collection" or "Collected" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent until such amounts have been Collected in Closing Agent's accounts.

**T. RESERVED.**

**U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county where the Real Property is located.

**V. FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15% of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service

This software is licensed to [Jose Luis Gener - United Realty Group Inc] www.transactiondesk.com.   TRANSACTIONS

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

556  (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
557  from the IRS authorizing a reduced amount of withholding.
558  (i)  No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
559  provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
560  stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
561  home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
562  shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
563  to the IRS.
564  (ii)  If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
565  or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
566  reduced sum required, if any, and timely remit said funds to the IRS.
567  (iii)  If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
568  provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
569  received as of Closing, Buyer shall, at Closing,  withhold the applicable percentage of the amount realized by Seller
570  on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
571  escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the
572  parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
573  directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
574  (iv)  In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
575  transaction, Seller shall deliver to Buyer, at Closing, the additional Collected funds necessary to satisfy the
576  applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
577  disbursement in accordance with the final determination of the IRS, as applicable.
578  (v)  Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
579  8288 and 8288-A, as filed.
580  **W. RESERVED**
581  **X.  BUYER WAIVER OF CLAIMS: *To the extent permitted by law, Buyer waives any claims against Seller***
582  ***and against any real estate licensee involved in the negotiation of this Contract for any damage or defects***
583  ***pertaining to the physical condition of the Property that may exist at Closing of this Contract and be***
584  ***subsequently discovered by the Buyer or anyone claiming* by, through, under or against the Buyer. *This***
585  ***provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive***
586  ***Closing.***

587  **ADDENDA AND ADDITIONAL TERMS**

588 * **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
589  Contract (**Check if applicable**):

☐ A.  Condominium Rider
☒ B.  Homeowners' Assn.
☐ C.  Seller Financing
☐ D.  Mortgage Assumption
☒ E.  FHA/VA Financing
☐ F.  Appraisal Contingency
☐ G.  Short Sale
☐ H.  Homeowners/Flood Ins.
☐ I.   RESERVED
☐ J.  Interest-Bearing Acct
☐ K.  RESERVED
☐ L.  RESERVED
.

☐ M.  Defective Drywall
☐ N.  Coastal Construction Control
       Line
☐ O.  Insulation Disclosure
☐ P.  Lead Paint Disclosure (Pre-1978)
☐ Q.  Housing for Older Persons
☐ R.  Rezoning
☐ S.  Lease Purchase/ Lease Option
☐ T.  Pre-Closing Occupancy
☐ U.  Post-Closing Occupancy
☐ V.  Sale of Buyer's Property
☐ W.  Back-up Contract

☐ X.  Kick-out Clause
☐ Y.  Seller's Attorney Approval
☐ Z.  Buyer's Attorney Approval
☐ AA.  Licensee Property Interest
☐ BB.  Binding Arbitration
☐ CC.  Miami-Dade County
         Special Taxing District
         Disclosure
☐ DD.  Seasonal/Vacation Rentals
☐ EE.  PACE Disclosure
☐ Other:

Buyer's Initials [mb] [mab]        Page 11 of 13        Seller's Initials JEC   LFA

This software is licensed to [Jose Luis Gener - United Realty Group Inc] www.transactiondesk.com.   TRANSACTIONS

590 * **20. ADDITIONAL TERMS:**

591     1.  Seller to close and pay for any open permits against this property.
592
593     2.  Seller to provide association budget, rules and regulations, and association by-laws
    within 3 days after effective date.
594
595     3.  Notwithstanding any provision to the contrary, Seller shall designate Closing Agent and
596     Buyer shall pay for Owner's Policy and charges, and
    Buyer shall pay the premium for Buyer's lender's policy and charges for closing services
597     related to the lender's policy, endorsements and
598     loan closing, which amounts shall be paid by Buyer to Closing Agent or such other provider as
599     Seller may select.
600
601
602
603
604
605
606
607

608                          **COUNTER-OFFER**

609 *   ☐ Seller counters Buyer's offer.


610                      **[The remainder of this page is intentionally left blank.**
611                 **This Contract continues with Line 612 on Page 13 of 13.]**

Buyer's Initials  _mb_  _mAb_          Page **12** of 13         Seller's Initials  JEC  LFA
FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors® and The Florida Bar.  All rights reserved.

This software is licensed to [Jose Luis Gener - United Realty Group Inc] www.transactiondesk.com.  TRANSACTIONS

612 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
613 **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

614 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

615 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
616 *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
617 *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
618 *interested persons.*

619 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
620 TO BE COMPLETED.

---

621 **ATTENTION: SELLER AND BUYER**

622 **CONVEYANCES TO FOREIGN BUYERS:** Part III of Chapter 692, Sections 692.201 - 692.205, Florida Statutes,
623 2023 (the "Act"), in part, limits and regulates the sale, purchase and ownership of certain Florida properties by
624 certain buyers who are associated with a "foreign country of concern", namely: the People's Republic of China, the
625 Russian Federation, the Islamic Republic of Iran, the Democratic People's Republic of Korea, the Republic of
626 Cuba, the Venezuelan regime of Nicolás Maduro, or the Syrian Arab Republic. **It is a crime to buy or knowingly**
627 **sell property in violation of the Act.**

628 **At time of purchase, Buyer must provide a signed Affidavit which complies with the requirements of the**
629 **Act.** Seller and Buyer are advised to seek legal counsel regarding their respective obligations and liabilities under
630 the Act.

---

631* Buyer: *Michael Broady*                                      Date: 03/04/2024
632* Buyer: *Maria Afrodi Broady*                                 Date: 03/04/2024
633* Seller: JAMES E CABRERA        *James E. Cabrera*            Date: 03/04/2024 08:46 PM
634* Seller: LUISA FERNANDA ALONSO  *Luisa Fernanda Alonso*      Date: 03/04/2024 08:50 PM

635 Buyer's address for purposes of notice                Seller's address for purposes of notice
636* _____                   _____
637* _____                   _____
638* _____                   _____

639 **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
640 entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
641 Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
642 agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
643 retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
644 made by Seller or Listing Broker to Cooperating Brokers.

645* Jose Luis Gener                                        Ivan Alonso
646 **Cooperating Sales Associate, if any** 2.5% Commission   **Listing Sales Associate** 2.5% Commission
647* United Realty Group Inc                                77 Realty, LLC.
648 **Cooperating Broker, if any**                          **Listing Broker**

FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Jose Luis Gener - United Realty Group Inc] www.transactiondesk.com.    TRANSACTIONS

Exhibit "B"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**IN THE MATTER OF:**
**Luisa Fernanda Alonso**                    **CASE NO.: 23-20053-PDR**
                                             **CHAPTER 13**

_____**Debtor**_____/

**ORDER GRANTING DEBTOR'S EXPEDITED MOTION TO**
**SELL HOMESTEAD REAL PROPERTY**

**THIS MATTER** came before the Court on March __, 2024, upon the Debtor's Expedited _Motion to Sell Homestead Real Property_ (the "Motion") (ECF No. __). The Court having considered the Motion and being otherwise duly advised and based on the record, it is;

**ORDERED**

1. The Debtor's Motion is GRANTED.

2. The Debtor is authorized to complete the sale as described in the contract attached to the Motion for the sale of Debtor's property located at 16720 SW 36 Street, Miramar, FL 33027 (the "Subject Property"), legally described as:

*Lot 26, Block 12, NAUTICA, according to the map or plat thereof as recorded in Plat Book 164, Page 36, the Public Records of Broward County, Florida.*

3.  Any closing agent effecting the closing on the sale of the Property is authorized and directed to pay off all claims secured by the property, pay all usual and customary costs of closing, and disburse the net proceeds to the Debtor without any further order of this court.

4.  Creditor, U.S. Bank Trust National Association, as Trustee of Chalet Series III Trust, shall be paid in full at closing pursuant to a proper payoff statement.

5.  The Debtor shall file an amended plan removing the Subject Property from receiving adequate protection payments within 30 days of the sale of the Subject Property.

6.  The related attorney's fees and costs for the Motion in the amount of $800.00 is approved.

7.  This Order is valid for a period of 60 days from the entry of the Order.

###

Submitted by:
Rachamin "Rocky" Cohen, Esq.
Attorney for Debtor
Florida Bar No. 96305
1801 NE 123 Street
Suite 314
North Miami, FL 33181
Telephone: 305-570-2326
Email: rocky@lawcls.com

**Attorney Rachamin Cohen, Esq. is directed to serve copies of this Order on all interested parties and file a Certificate of Service with the Court.**